IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CATHERINE MORENO-RIVERA,

**Plaintiff,**

v.                                    **CIVIL NO.** 09-1489 (FAB)

DHL GLOBAL FORWARDING,

**Defendant.**

OPINION & ORDER

BESOSA, District Judge.

Before the Court is defendant's motion for summary judgment. (Docket No. 43.)  Having considered the motion for summary judgment, plaintiff's opposition, and defendant's reply, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment, (Docket No. 43).

I.   **Background**

A.   **Procedural Background**

On August 17, 2009, plaintiff Catherine Moreno-Rivera ("Moreno") filed a complaint against DHL Global Forwarding ("DHL") alleging retaliation claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-15, Puerto Rico Law 17 ("Law 17"), P.R. Laws Ann. tit. 29, § 155h, and Puerto Rico Law 80 ("80"), P.R. Laws Ann. tit. 29, §§ 185a-185m. (Docket No. 7.)  On October 4, 2010, DHL filed a motion for summary judgment arguing that Moreno cannot establish a viable claim of

retaliation because:  (1) Moreno did not exhaust administrative remedies with regard to her participation in DHL's internal employment discrimination investigation; (2) Moreno has not made a *prima facie* case of retaliation; (3) Moreno cannot establish any evidence of pretext or discriminatory animus; and (4) Moreno cannot establish that DHL took any adverse employment action against her because of her participation in another employment discrimination case.  (Docket Nos. 42 & 43.)  On October 25, 2010, Moreno filed an opposition to the motion for summary judgment, arguing: (1) that exhaustion of administrative remedies with regard to the internal investigation is irrelevant because that investigation does not serve as the basis for her retaliation claims; (2) that she has established a *prima facie* case of retaliation; and (3) that DHL's proffered reasons for the challenged employment actions are pretext for discrimination. (Docket No. 46.)  DHL filed a reply on November 10, 2010.  (Docket No. 57.)

   **B.   Uncontested Facts**

        DHL is a company engaged in the business of freight forwarding, warehousing, and distribution.  (Docket No. 43-1 at ¶ 1; Docket No. 46-1 at 2; Docket No. 43-3 at ¶ 3.)  DHL has a station in Puerto Rico led by a District Manager, Arquimides ("Archie") Torrado ("Torrado").  (Docket No. 43-1 at ¶ 2; Docket No. 46-1 at 2; Docket No. 43-3 at ¶ 2.)  DHL has established anti-discrimination, anti-harassment and anti-retaliation policies,

including a complaint procedure, which prohibits "any form of retaliation against any employee for filing a bona fide complaint under this policy or for assisting in a complaint investigation." (Docket No. 43-1 at ¶ 3; Docket No. 46-1 at 2; Docket No. 43-4 at 4.)  DHL also has an "Open Door Philosophy" which encourages employees openly to seek information or advice from members of management on any aspect of their relationship with DHL.  (Docket No. 43-1 at ¶ 4; Docket No. 46-1 at 2; Docket No. 43-4 at 2.)  All of DHL's policies as well as the Employee Handbook known as the "Guide to One," January, 2005 revision ("Employee Handbook"), are posted on the internet and are accessible to DHL employees. (Docket No. 43-1 at ¶ 5; Docket No. 46-1 at 2; Docket No. 43-5 at 70-71.)

Moreno began her employment with DHL on February 8, 2000, as a Traffic Agent in the Export Department.  (Docket No. 43-1 at ¶ 6; Docket No. 46-1 at 2; Docket No. 43-5 at 35-39.)  At that time, the station's District Manager was Sergio D'Agostini.  Id. Four months later, Torrado became the District Manager of the Puerto Rico Station.  (Docket No. 43-1 at ¶ 7; Docket No. 46-1 at 2-3; Docket No. 43-5 at 39.)  At that time, D'Agostini's Administrative Assistant resigned. (Docket No. 43-1 at ¶ 8; Docket No. 46-1 at 3; Docket No. 43-5 at 38.)  Relying on the recommendation of a DHL Sales Representative, Leila Silva

("Silva"),[1] Torrado offered the position of his Administrative Assistant to Moreno. (Docket No. 43-1 at ¶ 9; Docket No. 46-1 at 3; Docket No. 43-3 at ¶ 4.) Moreno started working as Torrado's Administrative Assistant on June 15, 2000. (Docket No. 43-1 at ¶ 10; Docket No. 46-1 at 2; Docket No. 43-5 at 70-71.)

Moreno admitted that she was familiar with the anti-discrimination policy contained in the Employee Handbook. (Docket No. 43-1 at ¶ 20; Docket No. 46-1 at 9-10; Docket No. 43-5 at 70-71, 85.) She also recognized that the Employee Handbook was accessible through the internet and admitted to having downloaded a copy. Id. Moreno knew that if she felt discriminated, retaliated or harassed against, she could complain to her supervisor, DHL's Human Resources office, or other managers. (Docket No. 43-1 at ¶ 21; Docket No. 46-1 at 10; Docket No. 43-5 at 85.) She also knew that the anti-discrimination policy established that a complaint had to be provided in writing. Id.

In August 2006, Laura Rivera ("Rivera"), a former DHL Sales Representative, filed an internal complaint against Torrado for sexual harassment. (Docket No. 43-1 at ¶ 22; Docket No. 46-1 at 10; Docket No. 43-3 at ¶ 8.) Paul Osburn ("Osburn"), Senior Vice President for DHL's Eastern Region, and Billie Raisides

---

[1] Silva has at all times remained a Sales Representative for DHL, and continues to be employed by DHL, without any change in her Fair Labor Standards Act status, salary (other than commissions based on sale or regular salary increases), or benefits. (Docket No. 43-1 at ¶ 71; Docket No. 46-1 at 30-31; Docket No. 43-3 at ¶ 36.)

("Raisides"), Director of Human Resources, came to Puerto Rico to investigate that internal complaint. (Docket No. 43-1 at ¶ 23; Docket No. 46-1 at 10; Docket No. 43-3 at ¶ 8.) As part of the investigation, Osburn interviewed Torrado at the Intercontinental Hotel. <u>Id.</u> Torrado was very upset as a result of the investigation, and commented as much to Moreno. (Docket No. 43-1 at ¶ 24; Docket No. 46-1 at 10-11; Docket No. 43-3 at ¶ 9.) DHL also interviewed several other employees as part of the internal investigation, including Moreno and Silva. (Docket No. 43-1 at ¶ 25; Docket No. 46-1 at 11; Docket No. 43-3 at ¶ 10; 43-5 at 164; Docket No. 43-10 at 23-25.)

On October 3, 2006, Rivera filed a lawsuit against DHL before this Court captioned <u>Laura Rivera v. DHL Global Forwarding</u>, Civil No. 06-1990 (GAG) ("the <u>Rivera</u> case"). (Docket No. 43-1 at ¶ 36; Docket No. 46-1 at 15.) Moreno received a subpoena to appear at a deposition in that case, issued by Rivera's counsel, Juan Manuel Frontera. (Docket No. 43-1 at ¶ 37; Docket No. 46-1 at 15; Docket No. 43-5 at 161.) Moreno admitted that she did not know whether DHL had announced her as a witness in the <u>Rivera</u> case. (Docket No. 43-1 at ¶ 38; Docket No. 46-1 at 16; Docket No. 43-5 at 163.) Moreno was deposed on March 8, 2007. (Docket No. 43-1 at ¶ 39; Docket No. 46-1 at 16; Docket No. 43-11.) Torrado was not present at Moreno's deposition. (Docket No. 43-1 at ¶ 40; Docket No. 46-1 at 16; Docket No. 43-3 at ¶ 18.) Silva was also deposed

for the purposes of the <u>Rivera</u> case.  (Docket No. 43-1 at ¶ 42; Docket No. 46-1 at 16; Docket No. 43-10 at 26.)

In late 2007, Torrado had a conversation with Osburn during which he expressed concern about whether he had erroneously classified Moreno's position as exempt for the purposes of wage and hour legislation when, in reality, she performed duties that were more akin to those of a non-exempt employee.  (Docket No. 43-1 at ¶ 47; Docket No. 46-1 at 17-18; Docket No. 43-8 at ¶ 12.)  Both Torrado and Osburn brought this concern to the attention of DHL's Human Resources office.  <u>Id.</u>  In or around late December 2007, DHL's Human Resources office informed Torrado that Moreno's job position would be re-classified to non-exempt, and that he had to communicate this decision to Moreno.  (Docket No. 43-1 at ¶ 51; Docket No. 46-1 at 20; Docket No. 43-3 at ¶ 27.)

Starting on December 27, 2007, Moreno was out of the office on vacation.  (Docket No. 43-1 at ¶ 52; Docket No. 46-1 at 20; Docket No. 43-5 at ¶ 126-27, 130.)  Notwithstanding, she went voluntarily to the station office on December 28, 2007, to do the payroll.  <u>Id.</u>  Torrado took advantage of Moreno's presence at the office on that date and informed her that DHL's Human Resources office had decided to reclassify her position as non-exempt. (Docket No. 43-1 at ¶ 53; Docket No. 46-1 at 20; Docket No. 43-3 at ¶ 28; Docket No. 43-5 at 126-27.)  During that meeting, Torrado told Moreno that, despite the change in status, her salary,

benefits, and responsibilities would remain the same. (Docket No.
43-1 at ¶ 54; Docket No. 46-1 at 20; Docket No. 43-3 at ¶ 29;
Docket No. 43-5 at 128-29; Docket No. 43-7 at ¶ 9.) Torrado also
told Moreno that she would receive overtime compensation if
approved by any of the managers, and that she would not lose any
unused vacation time. Id. Torrado told her that, if she had any
concerns regarding the matter, she should contact Andrew Dippolito,
the Vice President of Human Resources Field Operations for the
Territory of North America. (Docket No. 43-1 at ¶ 56; Docket No.
46-1 at 20; Docket No. 43-3 at ¶ 30.) While on vacation, Moreno
exchanged various e-mails with Dippolito regarding her concerns
with the reclassification decision. (Docket No. 43-1 at ¶ 54;
Docket No. 46-1 at 20; Docket No. 43-5 at 139-41, 143; Docket No.
43-7 at ¶ 10.)

        Due to health problems, Moreno's vacation turned into an
extended leave of absence. (Docket No. 43-1 at ¶ 69; Docket No.
46-2 at 26; Docket No. 43-3 at ¶ 31; Docket No. 46-4 at 130-135.)
In February of 2008, summary judgment was granted in part and
denied in part in the Rivera case. (Docket No. 46-2 at 48; Docket
No. 57-1 at 39.) On April 2, 2008, Osburn and Torrado decided,
with Dippolito's approval, to terminate Moreno's employment with
DHL. (Docket No. 43-1 at ¶ 74; Docket No. 46-2 at 29; Docket No.
43-3 at ¶ 34; Docket No. 43-7 at ¶ 21.) In May of 2008, while
Moreno was still on a leave of absence, Torrado and Dippolito

Civil No. 09-1489 (FAB)                                           8

conducted a conference call to inform her that she had been
terminated.  (Docket No. 43-1 at ¶ 76; Docket No. 46-2 at 30;
Docket No. 43-7 at ¶ 23.)

**II.  Discussion**

    **A.  Summary Judgment Standard**

        The Court's discretion to grant summary judgment is
governed by Rule 56 of the Federal Rules of Civil Procedure.  The
rule states, in pertinent part, that a court may grant summary
judgment only if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as
a matter of law."  FED.R.CIV.P. 56(c); see also Santiago-Ramos v.
Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).
The party moving for summary judgment bears the burden of showing
the absence of a genuine issue of material fact.  See Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).

        Once a properly supported motion has been presented, the
opposing party has the burden of demonstrating that a trial-worthy
issue exists that would warrant the Court's denial of the motion
for summary judgment.  For issues where the opposing party bears
the ultimate burden of proof, that party cannot merely rely on the
absence of competent evidence, but must affirmatively point to
specific facts that demonstrate the existence of an authentic

dispute.  <u>See</u> <u>Suarez v. Pueblo Int'l., Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine."  Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  <u>Id</u>. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990).  The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation."  <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

B.    **Retaliation under Title VII[2]**

Title VII prohibits an employer from discriminating against an individual because he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he or she engaged in protected conduct; (2) that he or she suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct. Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005) (citing Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003)). Once a plaintiff satisfies the elements of the *prima facie* case, a burden of production falls on the employer to put forth a legitimate, nondiscriminatory reason for the adverse employment action. Valentin-Almeyda v. Mun. of Aquadilla, 447 F.3d 85, 95 (1st Cir. 2006). The ultimate burden of persuasion, however, remains with the plaintiff and he or she must show that the employer's nondiscriminatory reason is a pretext for retaliatory discrimination. Id.

---

[2] Moreno also brings retaliation claims pursuant to Puerto Rico Law 17. DHL concedes that these local claims follow the same legal standards as Title VII. Accordingly, the Court need not engage in an independent analysis to determine the whether summary judgment is appropriate with regard to those claims. See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 n.3 (1st Cir. 2010).

1.    **Protected Conduct**

The parties do not dispute the relevant protected conduct in this case, which plaintiff identifies as her participation and deposition testimony in the <u>Rivera</u> case. (Docket No. 46-1 at 14.)  Accordingly, the Court proceeds to consider the remaining elements of the *prima facie* case.

2.    **Adverse Employment Action**

To establish a retaliation claim successfully, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).  Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment."  <u>Id.</u> at 64.  "The alleged retaliatory action must be material, producing a significant, not trivial, harm."  <u>Carmona-Rivera v. Commonwealth of Puerto Rico</u>, 464 F.3d 14, 19 (1st Cir. 2006).  "'Context matters,' and 'the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint.'"  <u>Id.</u> (citing <u>Burlington Northern</u>, 548 U.S. at 69-70).  The First Circuit Court of Appeals has held that "adverse employment actions include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of

Civil No. 09-1489 (FAB)                                                12

harassment by other employees.'"   Marrero v. Goya of P.R., Inc.,
304 F.3d 7, 23 (1st Cir. 2002) (quoting White v. New Hampshire
Dept. of Corrections, 221 F.3d 254, 262 (1st Cir. 2000)).  Whether
an action is sufficient to support a claim of retaliation is judged
objectively and depends on the particular circumstances of the
case.  Burlington Northern, 548 U.S. at 69; Marrero, 304 F.3d
at 23.

          Plaintiff bases her retaliation claims on three
adverse employment actions:  (1) her termination; (2) an alleged
demotion; and (3) an alleged retaliatory hostile work environment.
(See Docket No. 46-1.)  Defendant challenges whether the harassment
alleged by plaintiff and the alleged demotion are sufficient to
constitute adverse actions for the purposes of a retaliation claim.
(Docket No. 42 at 12-27.)  The Court addresses each contention in
turn.

          **a.   Retaliatory Hostile Work Environment**

          Moreno alleges that in retaliation for her
participation in the Rivera case, she was subjected to a hostile
work environment.   In order to establish a hostile work
environment, a plaintiff must show that:  "'(1) that she (or he) is
a member of a protected class; (2) that she (or he) was subjected
to unwelcome sexual harassment; (3) that the harassment was based
upon sex; (4) that the harassment was sufficiently severe or
pervasive so as to alter the conditions of plaintiff's employment

and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.'" Agusty-Reyes v. Dep't. of Educ. of P.R., 601 F.3d 45, 52-53 (1st Cir. 2010) (quoting Valentin-Almeyda, 447 F.3d at 94). "Because the inquiry is fact specific, the determination is often reserved for a fact finder, but summary judgment is an appropriate vehicle for 'polic[ing] the baseline for hostile environment claims.'" Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999)) (citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19 (1st Cir. 2002)) (internal citations omitted).

     Moreno claims that as a result of the Supreme Court's holding regarding the definition of material adversity in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the hostile work environment standard for Title VII retaliation claims should be less stringent that the "severe and pervasive" standard used in Title VII discrimination claims. (Docket No. 46-1 at 15-16.) In support of this proposition, Moreno cites to two cases from the Third Circuit Court of Appeals which, in light of Burlington, alter the threshold for retaliatory hostile work environments from "severe and pervasive" to "materially adverse."

Civil No. 09-1489 (FAB)                                          14

See id.; Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d

Cir. 2006); Hare v. Potter, 220 Fed.Appx. 120, 131-32 (3d Cir.

2007).   Although  the  First  Circuit  Court  of  Appeals  has  not

specifically addressed whether Burlington altered the standard to

establish  a  retaliatory  hostile  work  environment,  it  has

consistently applied the "severe and pervasive" standard in that

context, even in the years following Burlington.   See Roman v.

Potter,  604  F.3d  34,  42  (1st  Cir.  2010);  Rivera-Martinez  v.

Commonwealth of Puerto Rico, No. 05-2605, 2007 WL 16069 at *4 (1st

Cir. Jan. 4, 2007); Noviello, 398 F.3d at 88-90.   In light of the

First Circuit Court of Appeals' continued, and recent, application

of  the  "severe  and  pervasive"  standard  in  the  context  of

retaliatory  hostile  work  environments,  Moreno  must  meet  that

standard in order to prevail on her retaliatory hostile work

environment claim.

          The evidence presented at the summary judgment

stage of the proceedings appears insufficient to support the

existence of a hostile work environment for the purposes of a

retaliation claim.   Moreno points to several examples of conduct

which she claims form an hostile work environment:   (1) her

exclusion  from  a  corporate  exhibition;  (2)  Torrado  accusing

plaintiff of not informing him of the receipt of electronic

equipment;  (3)  Torrado  divesting  Moreno  of  some  duties  and

responsibilities;  (4)  Torrado  blaming  Moreno  for  a  software

malfunction; (5) Torrado taking plaintiff's company phone away
while she was on leave which consequently precluded her from
eligibility for "standby status"; (6) Torrado referring to her as
"this fucking woman" and "this bitch"; (7) Torrado telling her on
two occasions that she was not a manager in response to Moreno's
alleged performance of managerial duties; and (8) Torrado sending
an e-mail to other DHL employees while Moreno was on sick leave
telling them to forward all communications regarding Moreno to
him.[3]  (Docket No. 46-1 at 17-18.)

          As a preliminary matter, the Court notes that
the alleged exclusion from a corporate exhibition as well as one of
the alleged incidents in which Torrado told Moreno that she was not
a manager occurred prior to Moreno's identified protected activity,
and cannot be considered for the purposes of evaluating her hostile
work environment claim.  See Bibiloni Del Valle v. Commonwealth of
Puerto Rico, 661 F.Supp.2d 155, 168 (D.P.R. 2009) (noting in the
context of retaliation claims that the relevant conduct is that
which occurs subsequent to the alleged protected activity); (Docket

---

[3] Moreno points to an incident in which Torrado refused to award
plaintiff a salary increase in March 2007. (Docket No. 46-1 at 17-
18.)  This discrete act is, however, time barred, as it occurred
well over a year before the filing of the EEOC charge.  See
O'Rourke v. City of Providence, 713, 730 (1st Cir. 2001) (citing
Provencher, 145 F.3d at 13).  Moreno also claims that DHL's failure
to return some of personal items after her termination constitutes
part of her hostile work environment. (Docket No. 46-1 at 17-18.)
Given that this act occurred after her termination, it does not
seem particularly relevant to her work environment.

Civil No. 09-1489 (FAB)                                              16

No. 46-4 at 108.)  Furthermore, the depositions to which plaintiff
cites reveal that the offensive comments made by Torrado were not
made in Moreno's presence, but rather were made in the presence of
other employees who subsequently related them to Moreno.  (See
Docket No. 46-15 at 21-22.)  Likewise, Torrado's e-mail ordering
other employees to forward communications regarding Moreno to him
was neither addressed, nor ever sent, to Moreno.  (See Docket
No. 46-24.)  Thus, these incidents are not probative of the
hostility or abusiveness of Moreno's work environment following her
protective activity.  See Bibiloni Del Valle, 661 F.Supp.2d at 168.

          The remaining incidents alleged by Moreno,
Torrado's complaints and a few verbal reprimands, hardly constitute
a situation that could be characterized as a hostile work
environment.  Those incidents are a far cry from that found by
other courts to be sufficiently severe and pervasive.  See, e.g.,
Rosario v. Dep't. of the Army, 607 F.3d 241, 249 (1st Cir. 2010);
Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19-20 (1st Cir. 2002);
cf. Rigau v. Pfizer Caribbean Corp., 525 F.Supp.2d 272, 284 (D.P.R.
2007).  Having examined the record on summary judgment, it is clear
that Moreno has failed to marshal the evidence necessary to
convince any rational factfinder that she suffered harassment to
the degree that her work environment became "hostile" or "abusive."
See id. Accordingly, her retaliation claims predicated on
retaliatory hostile work environment are **DISMISSED WITH PREJUDICE.**

### b.   Alleged Demotion

DHL argues that Moreno's status change from exempt to non-exempt "did not constitute a materially adverse action that would rise to the level of actionable retaliation." (Docket No. 42 at 11.)  Although Moreno characterizes that change in status as a demotion, she has provided no evidence that her duties, responsibilities, or salary changed in any significant way following the reclassification of her position as non-exempt.  The only evidence presented by Moreno is her own deposition testimony where she discusses her fears about the potential freezing of her salary, bonus eligibility, and ability to compete for other positions at DHL.  (Docket No. 46-4 at 137-148.)  At no point in that deposition testimony, however, does Moreno explain the basis for her speculation, or identify any tangible change in her employment that could serve as a basis for a Title VII retaliation claim.  See id.

"'Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'"  Marrero, 304 F.3d at 23 (quoting Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).  Moreno has failed to provide any support for her claim that the status change "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination . . .'" other than

Civil No. 09-1489 (FAB)                                                    18

her own disagreement with DHL's decision.  See Burlington Northern
and Santa Fe Ry. Co., 548 U.S. at 68; Morales-Vallellanes v.
Potter, 605 F.3d 27, 38 (1st Cir. 2010).   Accordingly, her
retaliation claims based on that status change are **DISMISSED WITH
PREJUDICE**.

      **3.  Causation**

      To establish a *prima facie* case of retaliation, a
plaintiff must demonstrate a causal link between the protected
conduct and the adverse employment action.  Ramirez Rodriguez, 425
F.3d at 84.   In some circumstances, temporal proximity between
those two events may show the requisite causation, but only if the
that temporal proximity is "very close."  See Calero-Cerezo v. U.S.
Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (quoting Clark
County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)).   The
First  Circuit  Court  of  Appeals  has  found  one  month  between
protected  activity  and  adverse  employment  action  to  be  a
sufficiently short period of time to create that inference.   See
id.  When considering whether a plaintiff has shown the necessary
causal  connection,  courts  "'should  consider  the  actions  taken
against  the  employee  within  the  overall  context  and  sequence  of
events[,] the historical background of the decision, any departures
from  normal  procedure,  and  contemporary  statements  by  the
employer's decision makers.'"   Gonzalez Bermudez v. Potter, 675

F.Supp.2d 251, 258 (D.P.R. 2009) (quoting <u>Vargas v. Puerto Rican-American Ins. Co.</u>, 52 F.Supp.2d 305, 313-14 (D.P.R. 1999)).

        DHL argues that there is insufficient temporal proximity to find a causal connection between Moreno's protected activity and her termination.  (Docket No. 42 at 19.)  This is indeed true.  "Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."  <u>Calero-Cerezo</u>, 355 F.3d at 25.  Over a year passed between the date of Moreno's protected activity and her termination, thus undermining any inference of causation based solely on the time period between Moreno's protected activity and the termination of her employment at DHL.  <u>See</u> <u>id.</u>

        Moreno has presented, however, other evidence to establish a causal connection between her deposition testimony and her termination.  Moreno proffers testimony of statements made by Torrado, who was involved in the decision to terminate her employment, which indicate a retaliatory animus.  (See Docket No. 46-1 at 19-20.)[4]  Moreno testified in her deposition that Torrado accused her of lying about her involvement with the internal investigation that led up to the civil action in the

---

[4] Moreno also attempts to use these statements as direct evidence of retaliation.  Although, as discussed below, these statements may be sufficient to establish causation and pretext because they reveal retaliatory animus, they do not constitute "direct evidence" for the purposes of a retaliation claim because they do not "bear squarely on the contested employment decision." <u>Patten v. Wal-Mart Stores East, Inc.</u>, 300 F.3d 21, 25 (1st Cir. 2002).

Rivera case.  (Docket No. 46-4 at 98-99.)  Silva further testified
that Torrado identified Moreno as one of the employees involved
with the internal investigation at DHL, wanted to hold a
confrontation meeting with Moreno regarding her involvement in that
investigation.  (Docket No. 46-13 at 30, 42-45.)  Silva also
described a meeting at which Torrado told numerous DHL employees
that he knew others were behind the Rivera investigation and civil
action and that they would fall like Rivera.  Id.

   The burden to establish a *prima facie* case "'is not
an onerous one.'"  Dennis v. Osram Sylvania, Inc., 549 F.3d 851,
858 (1st Cir. 2008) (quoting Calero-Cerezo, 355 F.3d at 26).  Given
Torrado's involvement in the termination of Moreno's employment at
DHL, the above-cited statements regarding the Rivera investigation,
civil action, and Moreno's involvement in those proceedings create
a genuine issue of material fact as to the existence of the
necessary causal link.

   **4.   Pretext**

   Having found that Moreno has established a *prima
facie* case of retaliation with regard to her termination, the
burden shifts to DHL to articulate a nondiscriminatory reason that
adverse employment action.  DHL claims that Moreno's termination
was not due to any retaliatory motive, but rather that Moreno's
duties were being adequately performed by other DHL employees
during her leave of absence.  (Docket No. 42 at 28-29.)  DHL states

that because of that situation, it determined that Moreno's position was no longer needed and terminated her employment.  Id.

Moreno argues that DHL's nondiscriminatory reason is merely a pretext for retaliation based on her participation in the Rivera case.  (Docket No. 46-1 at 20-21.)  Moreno "can establish . . . pretext for discrimination in a number of ways." Santiago-Ramos, 217 F.3d at 55.  One of those ways is "to show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." Id.  As noted above in the Court's analysis of Moreno's *prima facie* case, Moreno has proffered evidence of statements made by Torrado which indicate retaliatory animus related to the Rivera case.  (See Docket No. 46-1 at 19-20.)  The uncontested facts indicate that Torrado was involved to a large degree in the decision to terminate Moreno's employment.[5]  (Docket No. 43-1 at ¶ 72.)  In fact, it appears that Torrado provided DHL with the sole input regarding performance of Moreno's duties by other employees, which served as the basis for the elimination of Moreno's position.  (See Docket No. 43-3 at 34.)

"To withstand summary judgment, a plaintiff need not 'prove by a preponderance of the additional evidence that [retaliation] was in fact the motive for the action taken.  All a plaintiff has to do is raise a genuine issue of material fact as to

---

[5] Plaintiff attempts to deny this fact, but provides no relevant record citation to do so properly as required by Local Rule 56(c). (See Docket No. 46-2 at 28.)

Civil No. 09-1489 (FAB)                                                    22

whether retaliation motivated the adverse employment action.'" Collazo v. Bristol-Meyers Squibb Mfg., Inc., 617 F.3d 39, 50 (1st Cir. 2010) (quoting Dominguez-Cruz v. Suttle-Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)).  The statements made by Torrado, who was a key player in the decision to terminate Moreno's employment, create a genuine issue of material fact as to the motivation for that adverse employment action which precludes summary judgment on Moreno's remaining Title VII retaliation claim.[6]

## III. Conclusion

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment, (Docket No. 43). The motion is **GRANTED** with regard to Moreno's retaliation claims under Title VII and Law 17 based on a hostile work environment or any alleged demotion.  Accordingly, those claims are **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** with regard to Moreno's remaining retaliation claims based on her termination and her Law 80 claim.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 26, 2011.

                                   s/ Francisco A. Besosa
                                   FRANCISCO A. BESOSA
                                   UNITED STATES DISTRICT JUDGE

---

[6] Moreno also brings a claim for termination without just cause pursuant to Puerto Rico Law 80.  Given that a genuine issue of material fact remains regarding the existence of retaliatory motivation for Moreno's termination, summary judgment on that claim is also precluded.  See Collazo, 617 F.3d at 53 n.10.